HERBERT H. SPRINGFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97247.   Promulgated April 30, 1940.

*John W. Drye, Jr., Esq.*, and *Theodore Pearson, Esq.*, for the petitioner.

*L. W. Shaw, Esq.*, for the respondent.

### OPINION.

MELLOTT: The Commissioner determined deficiencies in the income tax of petitioner for the calendar years 1934 and 1935 in the respective amounts of $2,119.62 and $9,313, or a total of $11,432.62.

The petition alleges that the Commissioner erred (a) in determining that petitioner received compensation in the amount of $10,000 in the calendar year 1934 and $45,000 in the calendar year 1935 by virtue of his purchase from Servel, Inc., of shares of its common stock pursuant to option agreements theretofore entered into by petitioner and Servel, Inc.; and (b) in refusing to allow as a deduction from gross income for the calendar year 1935 the amount of $550 paid by petitioner during that year as compensation to his secretary. These allegations were denied in the respondent's answer.

The proceeding was submitted upon a stipulation of facts. Error (b) was abandoned and petitioner now concedes that the respondent did not err in disallowing the deduction claimed. It is agreed that if issue (a) is decided in favor of the respondent the deficiencies are in the amounts determined. If decided in favor of the petitioner there is no deficiency for the year 1934 but there is a deficiency for 1935 in the amount of $93.50.

The issue is entirely one of law. Epitomizing the facts, petitioner and Servel, Inc., a corporation engaged in manufacturing and selling gas refrigerators and other products, entered into several contracts of employment, the first one being dated March 1, 1930, the second

January 1, 1931, the third May 29, 1931, and the fourth March 25, 1932. Under the first three contracts petitioner's salary was $50,000 per year and he was given certain options to purchase stock which need not be referred to at any length here. All of the agreements are set out in full in the stipulation, the last mentioned being referred to as Exhibit D. Exhibit D was modified by an agreement dated July 26, 1932, shown as Exhibit E to the stipulation, by an agreement dated May 22, 1933, shown as Exhibit F, and by an agreement dated March 23, 1934, shown as Exhibit G. Exhibit D provides:

SECOND: Servel hereby agrees to employ Mr. Springford and Mr. Springford hereby accepts employment by Servel for a period commencing March 15, 1932, and ending February 28, 1933, upon the terms and conditions hereinafter set forth.

THIRD: Mr. Springford agrees to continue for the balance of his present term of office as Chairman of the Board of Servel and thereafter in such capacity as the Board of Directors may from time to time determine, to devote all of his time, skill and energy to the affairs of Servel and its subsidiary and affiliated companies and without additional compensation to act in such capacity in respect of said subsidiary and affiliated companies as shall from time to time be determined.

FOURTH: A cash salary shall be paid to Mr. Springford from March 15, 1932, at the rate of Forty-five thousand Dollars ($45,000) per annum, payable in monthly instalments at the end of each month, the first payment to be made March 31, 1932.

FIFTH: As further consideration for Mr. Springford's entering into this agreement and performing services as Chairman of the Board of Servel, or in such other capacity as the Board of Directors may from time to time determine, and if determined in a like capacity in respect of subsidiary or affiliated companies, Servel agrees to grant and hereby grants to Mr. Springford options to purchase shares of the Common Stock of Servel, as now constituted, in the amounts, at the prices and on the terms hereinafter set forth.

SIXTH: The options to purchase Common Stock of Servel granted to Mr. Springford under the terms of this Agreement, shall be three (3) in number:

(a) Option No. 1 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $4.00 per share and may be exercised at any time during the period commencing March 25, 1932, and ending February 28, 1933, and at no other time.

(b) Option No. 2 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $5.00 per share and may be exercised at any time during the period commencing March 1, 1933 and ending February 28, 1934, and at no other time.

(c) Option No. 3 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $6.00 per share and may be exercised at any time during the period commencing March 1, 1934 and ending February 28, 1935, and at no other time; provided, however, that said option may only be exercised if Mr. Springford was in the employ of Servel on December 31, 1932.

SEVENTH: Anything herein contained to the contrary notwithstanding, so long as any Common Stock of Servel is listed on the New York Stock Exchange, Servel shall not be obliged to deliver to Mr. Springford any Common Stock in respect of which options are hereby granted until authority for the listing

of such Common Stock upon the New York Stock Exchange has been obtained. At the request of Mr. Springford, Servel agreees to make every reasonable effort to obtain authority for the listing on the New York Stock Exchange of all the Common Stock required for delivery upon the exercise of the options hereby granted to Mr. Springford.

Exhibit E grants to petitioner the right to purchase common stock of the par value of $1 per share "when, as and if" the certificate of incorporation is changed, amending its common stock without par value into common of a par value of $1.

Exhibit F provides in part as follows:

WHEREAS, under date of March 25, 1932, Servel and Mr. Springford entered into an agreement for the employment of Mr. Springford by Servel whereby, among other things, certain options were granted by Servel to Mr. Springford for the purchase by Mr. Springford of not exceeding in the aggregate forty-five thousand (45,000) shares of the Common Stock without par value of Servel, said options being therein designated, respectively, as Option No. 1, Option No. 2 and Option No. 3; and

WHEREAS, thereafter and under date of July 26, 1932, Servel and Mr. Springford entered into an agreement supplemental to said agreement dated March 25, 1932, modifying the terms of said agreement dated March 25, 1932 by providing that said options should be applicable to shares of the Common Stock of the par value of $1. per share of Servel, in place of said shares of Common Stock without par value, and in other respects ratifying and confirming the terms and provisions of said agreement dated March 25, 1932 (hereinafter, as so modified, called the Agreement of March 25, 1932); and

WHEREAS, the term within which said Option No. 1 granted to Mr. Springford by the Agreement of March 25, 1932 might be exercised has expired, and Mr. Springford is not under contract of employment with Servel; and

WHEREAS, Servel desires to induce Mr. Springford to continue in its employment, and in consideration thereof is willing to extend the term within which said Option No. 1 may be exercised, provided that certain modifications are made in the terms and provisions of the Agreement of March 25, 1932 regarding the manner in which said Option No. 3 thereby granted to Mr. Springford may be exercised, and Mr. Springford has agreed to continue in the employment of Servel and is willing to agree to such modifications;

Now, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00), lawful money of the United States, to each of the parties hereto in hand paid by the other, and of other good and valuable considerations, the receipt of which is hereby acknowledged, Servel and Mr. Springford hereby agree as follows:

FIRST: That the Agreement of March 25, 1932 shall be and is hereby amended as follows:

1. By striking out the whole of Article SIXTH thereof, as now constituted, and inserting in place thereof the following:

"SIXTH: The options to purchase common stock of Servel granted to Mr. Springford under the terms of this agreement shall be three in number:

(a) Option No. 1 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $4.00 per share, and may be exercised at any time during the period commencing March 25, 1932 and ending February 28. 1934. and at no other time:

(b) Option No. 2 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $5.00 per share, and may be exercised at any time during the period commencing March 1, 1933, and ending February 28, 1934, and at no other time;

(c) Option No. 3 is for the purchase of all or any part of 15,000 shares of Common Stock at a price of $6.00 per share and may be exercised at any time during the period commencing March 1, 1934 and ending February 28, 1935, if Mr. Springford is in the employ of Servel at the time of such exercise, and at no other time; provided, however, that if at any time prior to February 28, 1935 Servel shall obligate itself to convey and transfer all or substantially all of its business, property and assets, then Option No. 3 may be exercised by Mr. Springford during the thirty-day period immediately succeeding the date of the contract, agreement, understanding or commitment by which Servel shall obligate itself to make such conveyance and transfer, and at no other time, provided that Mr. Springford shall have been in the employ of Servel on such date."

The agreement of March 23, 1934, Exhibit G, reads in part as follows:

1. Servel hereby employs Mr. Springford and Mr. Springford hereby agrees to enter into the employ of Servel for the period commencing March 23, 1934, and ending February 28, 1935, upon the terms and conditions hereinafter provided.

2. Mr. Springford's duties shall be in an advisory capacity only and during the period above specified he agrees from time to time to give such advice and counsel to the Chairman of the Board and the President of Servel as they may from time to time reasonably request. During such period Mr. Springford shall be free to accept other employment from any person, association, corporation or concern and to conduct any business, other than in the refrigeration field.

3. Mr. Springford's compensation during the term of this agreement, for the period commencing March 23, 1934, and ending March 31, 1934, shall be at the rate of $45,000 per year; and for the period commencing April 1, 1934, and ending February 28, 1935, shall be the sum of $15,000, payable as follows:

$ 4,090.92, in equal monthly installments of $1,363.64 each on the last days of April, May and June, 1934

$10,909.00, at such time or times after June 30, 1934, as Mr. Springford may in writing designate.

4. It is expressly understood and agreed that Mr. Springford, as an employee of Servel under the terms and provisions of this agreement, shall have the right to exercise all unexpired options to purchase Common Stock of Servel under his existing contracts with Servel, subject to the terms and provisions of said contracts.

On and prior to March 1, 1930, petitioner was a director and chairman of the board of directors of Servel, Inc., which position he occupied until January 26, 1934. On March 23, 1934, he ceased to be a director but served in an advisory capacity as an employee until February 28, 1935. On February 21, 1934, under option 2 of Exhibit D, as modified by Exhibits E and F, he purchased from Servel, Inc.,

5,000 shares of its common stock and paid the sum of $25,000, or $5 per share. On February 20, 1935, under option 3 of Exhibit D, as modified by Exhibits E, F, and G, he purchased from Servel 15,000 shares of its common stock for $90,000, or $6 per share.

The fair market value of the common stock of Servel per share was as follows on the dates indicated:

| | | | |
|---|---|---|---|
| March 25, 1932 | $4.00 | Feb. 21, 1934 | $7.00 |
| July 26, 1932 | 2.125 | March 1, 1934 | 6.25 |
| March 1, 1933 | 1.5625 | Feb. 20, 1935 | 9.00 |
| May 22, 1933 | 1.0625 | | |

None of the shares acquired by petitioner as herein above set out were sold or disposed of by him during the calendar year 1934. In his income tax returns for the years 1934 and 1935 petitioner reported no profit from the acquisition of the shares.

During the calendar year 1935, petitioner sold certain of the shares so acquired by him as follows:

On January 3, 1935, he sold for an aggregate price of $7,925, 1,000 of the shares which he had acquired on February 21, 1934; and

On April 5 and 6, 1935, he sold for an aggregate price of $22,849.53, 2,500 of the shares which he had acquired on February 20, 1935.

In his Federal income tax return for the calendar year 1935 petitioner used, as the basis for the sale of the 3,500 shares sold, the amount paid by him for said shares, viz., $5 per share for the 1,000 shares acquired on February 21, 1934, and $6 per share for the 2,500 shares acquired on February 20, 1935, and reported and paid tax upon the gain realized upon said sales as follows:

1,000 shares:
Sold for _____ $7,925.00
Basis at $5 _____ 5,000.00

Gain thereon _____ 2,925.00
2,500 shares:
Sold for _____ $22,849.53
Basis at $6 _____ 15,000.00

Gain thereon _____ 7,849.53

Total gain thereon _____ 10,774.53

Petitioner's income tax returns for the calendar years 1934 and 1935 were duly filed with the collector of internal revenue for the second New York district and the amounts of tax shown to be due thereon were duly paid.

In the notice of deficiency, dated December 8, 1938, respondent determined that the excess of the market values of the stock, on the

respective dates the options were exercised, over the agreed option prices represented additional compensation received by petitioner on said dates. He accordingly adjusted petitioner's net income for the years in question by making additions thereto as follows:

*1934*

5,000 shares acquired February 21, 1934:

| | |
|---|---:|
| Market value on said date | $35,000 |
| Agreed option price paid therefor | 25,000 |
| Additional compensation | 10,000 |

*1935*

15,000 shares acquired February 20, 1935:

| | |
|---|---:|
| Market value on said date | $135,000 |
| Agreed option price paid therefor | 90,000 |
| Additional compensation | 45,000 |

In said deficiency letter respondent adjusted the basis of the aforesaid 3,500 shares sold by petitioner in 1935 to agree with the market values stated above, thereby reducing the gain realized by petitioner on the sale of said shares by $9,500, viz., from $10,774.53, as reported in the return, to $1,274.53.

The basic question has been passed upon by the courts and the Board in numerous cases. Some have arisen from the Commissioner's disallowance of the deduction from gross income of the excess of the fair market value of stock over the price at which it was sold to an employee, the corporation claiming that such excess constituted additional compensation paid. *Gardner-Denver Co.* v. *Commissioner*, 75 Fed. (2d) 38; certiorari denied, 295 U. S. 763; *Electric Storage Battery Co.*, 39 B. T. A. 121. Others have involved the basis to be used by the employee in computing his gain or loss upon a subsequent sale or other disposition. *Larkin* v. *United States*, 78 Fed. (2d) 951; *Robinson* v. *Commissioner*, 59 Fed. (2d) 1008; *Salvage* v. *Commissioner*, 76 Fed. (2d) 112; *Helvering* v. *Salvage*, 297 U. S. 106; *Bothwell* v. *Commissioner*, 77 Fed. (2d) 35. Many have involved situations somewhat analogous to the one before us—where the Commissioner has determined that an employee who purchased stock from his corporate employer at less than its fair market value received taxable income in the year the purchase was made, equivalent to the excess of such fair market value over the purchase price. *Albert Russel Erskine*, 26 B. T. A. 147; *Omaha National Bank* v. *Commissioner*, 75 Fed. (2d) 434, reversing 29 B. T. A. 817; *Delbert B. Geeseman*, 38 B. T. A. 258; *Gordon M. Evans*, 38 B. T. A. 1406; *Rossheim* v. *Commissioner*, 92 Fed. (2d) 247; *Charles E. Adams*, 39 B. T. A. 387.

The conclusions reached in the cited cases may not always have been consistent; but they seem to establish the rule that if the right to purchase stock is granted as compensation or additional compensation for services rendered or to be rendered, then the difference between the price paid and the fair market value of the stock when acquired is deductible by the corporation as compensation paid to its employee, may be added to the basis for the computation by the employee of his gain or loss upon a subsequent sale or other disposition, and constitutes part of his gross income in the year of acquisition.

Respondent insists that his determination is justified under the fifth provision of the contract of March 25, 1932, (Exhibit D) granting the options "As further consideration for Mr. Springford's entering into this agreement and performing services as Chairman of the Board * * *"; by the restriction contained in subparagraph (c) of Exhibit F requiring Springford to be in the employ of Servel at the time of the exercise of the option; in the fact that his salary, previous to the execution of Exhibit D, had been $50,000 per year instead of $45,000 with options to purchase stock at different prices and dates and under different terms; in the circumstance that there was no restriction upon his right to sell the stock immediately upon receipt of it from his employer; in the fact that the right was given to him as an executive officer and not as a part of a general plan for the benefit of all employees; and in the circumstance that he could not lose by the transaction since he was not required to make any purchase and would do so only in the event that it would result in gain to him.

Petitioner argues that the Commissioner is attempting to tax a "paper profit"; that the sales were made in discharge of a binding contract which had been executed at a time when the agreed purchase prices were actually in excess of the then current market value; that the fact that a profit was actually realized was merely fortuitous and neither of the contracting parties knew that that would be the result of the agreements; that the rights granted were too speculative to have any value; that under the rationale of *Phillip W. Haberman*, 31 B. T. A. 75; affd., 79 Fed. (2d) 995, if the rights are to be taxed at any time other than when actually granted, they should be taxed on the first day that they could have been exercised, at which time, under the stipulated facts, the prices were below or substantially equivalent to those petitioner was required to pay; that the decision of the tax question ought not to turn upon the niceties of whether a contract produces a given result by way of consideration or by way of condition; that it should not be held that petitioner "has recited himself into taxable income" merely because the contract which he signed states that the options were granted "As further

consideration for  *  *  *  performing services"; and that most of the decided cases have tended to limit,· rather than to extend, the rule of the *Erskine* case.

Respondent, upon brief, asks that findings be made to the effect that the prices at which the purchases were made "were fixed by services rendered and to be rendered" and that the "rights to purchase stock, conferred upon petitioner by Options 2 and 3  *  *  * constituted additional compensation" to him.  We have refrained from making such finding, not only because it is more in the nature of a conclusion than it is a fact, but also because the stipulated facts do not, in our opinion, support it.  In *Delbert B. Geeseman, supra*, strongly relied upon by the respondent as an effort by the Board "to clarify the previous confused state of the law on this subject", it is stated that "as a prerequisite to the conclusion sought by the respondent it should definitely and clearly appear that a transaction, which in form is nothing more than a purchase and to an obvious and substantial extent is unquestionably a purchase, is in fact to some extent the payment of compensation for services rendered or to be rendered."  In our opinion the stipulated facts make no such definite and clear showing.  We do not intimate that the respondent had any burden of proof which he failed to sustain. We give him the full benefit of the presumption of correctness attaching to his notice of deficiency.  But since all of the facts are before us we do not think it can be said, as a matter of law, that the purchase was "in fact to some extent payment of compensation for services."

A detailed analysis of cited or pertinent cases would not be particularly helpful.  Such an analysis was made in the recent cases of *Gordon M. Evans* and *Charles E. Adams, supra.*  It was pointed out in the *Adams* case that although there was "undoubtedly connection between petitioner's position as an employee and the granting of the option to him,  *  *  *  it did not amount, by any means, to the option being granted as compensation for services rendered."  In the *Evans* case, even though the right to purchase stock was given "as additional and separate consideration for  *  *  *  [the taxpayer's] continued best efforts in the service of the company", it was held that "the injection into the extended plan of an arrangement whereby additional compensation was so paid to employees does not affect or change the purchase of Kelvinator Corporation stock by petitioner into the payment of compensation by the corporation."

The line of demarcation between cases holding that a taxpayer has realized taxable income through the purchase from his employer of stock at a "bargain" price under an option and those holding that no taxable income has been realized until the stock is subsequently

sold, is not very distinct. That the Treasury Department is experiencing difficulty in finding and applying a correct rule, is indicated by the recent change in its regulations, the old (Regulations 94, art. 22 (a)–1) providing that "If property is transferred by * * * an employer to an employee, for an amount substantially less than its fair market value, * * * such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value", while the later one (Regulations 101, art. 22 (a)–1) adds the words "to the extent that such difference is in the nature of * * * compensation for services rendered or to be rendered."

The new regulation, as such, is not applicable in the instant proceeding; but, as we have pointed out, the same rule seems to be established by the decided cases. Since we can not find that the purchase of stock in the instant proceeding was payment of compensation, it follows that, pursuant to the stipulation of the parties,

> *Decision will be entered that there is no deficiency for the year 1934 and that there is a deficiency of $93.50 for the year 1935.*